UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELL OFFSHORE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6278** |
| **TESLA OFFSHORE, L.L.C., ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] *in limine* filed by plaintiff, Shell Offshore Inc. ("Shell"), to exclude certain safety-related documents. All defendants have filed oppositions.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

The factual background is set forth at greater length in a prior order and reasons.[3] Briefly, this matter arises out of an alleged allision between a mooring line holding in place the DEEPWATER NAUTILUS, a drilling rig owned by Shell, and a sonar "fish" being towed by the M/V INTERNATIONAL THUNDER, a vessel owned and operated by International Offshore Services, L.L.C. and International Marine, LLC (collectively, "International"), and chartered to Tesla, for the purpose of conducting an underwater archaeological survey of the seafloor. Whether Shell acted negligently is a disputed issue, and Shell anticipates that defendants will introduce at trial two safety-related documents prepared by Shell *before* the incident: (1) the Offshore Vessel Inspection Database ("OVID") safety inspection, and (2) the Simultaneous Marine Operations

---

[1] R. Doc. No. 181.
[2] R. Doc. Nos. 188, 195, 198.
[3] R. Doc. No. 168.

1

("SIMOPS") plan.[4]

Although the parties vigorously dispute the provenance and significance of the OVID safety inspection, it is undisputed that an inspection of the DEEPWATER NAUTILUS was conducted and a document was produced which noted: "Forward radar is out of service and radar is not routinely operated during drilling phase. Regular lookout not kept while underway or on location."[5] The same document contained the following "Suggested Action from Audit Team": "Radars to be repaired and function tested. Policy and procedure for radar operation and monitoring to be developed."[6]

The SIMOPS plan is "Technical Guidance for vessels on issues pertaining to Simultaneous Marine Operations."[7] The plan states that it applies "to all vessels owned or operated by Transocean[8] and/or its subsidiaries" and that a "plan must be developed for any vessel working within the 500 meter zone or anchor pattern of a moored installation excluding supply vessels."[9] The plan notes "an increase in the number of close passes by seismic survey vessels,"[10] and that there are "obvious hazards associated with close approaches" that "could result in the seismic vessel, or its equipment, coming into contact with the installation."[11] Shell characterizes the SIMOPS plan as "a plan for how vessels servicing the NAUTILUS are supposed to interact with the rig."[12] Consequently, it only "addresses how vessels should act when working *with* and *within* a 500-meter zone (~1640 ft.) of

---

[4] R. Doc. No. 181-1, at 1-2.
[5] R. Doc. No. 188-1, at 1.
[6] R. Doc. No. 188-1, at 1.
[7] R. Doc. No. 188-2, at 8.
[8] Shell contracted with Transocean with respect to the DEEPWATER NAUTILUS and is responsible for Transocean's fault. R. Doc. No. 82; R. Doc. No. 171, at 28.
[9] R. Doc. No. 188-2, at 8.
[10] R. Doc. No. 188-2, at 12.
[11] R. Doc. No. 188-2, at 13.
[12] R. Doc. No. 181-1, at 5.

a moored installation such as" the DEEPWATER NAUTILUS.[13] Tesla and International do not disagree with this characterization, but as will be discussed below, they disagree regarding the plan's relevance.

## DISCUSSION

Shell moves to exclude the OVID safety inspection and the SIMOPS plan pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

### A.     Applicable Evidentiary Rules

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible" unless otherwise provided by the U.S. Constitution, a federal statute, another Federal Rule of Evidence, or "other rules prescribed by the Supreme Court." Fed. R. Evid. 402. "[T]he standard of relevance in an evidentiary context is not a steep or difficult one to satisfy." *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014).

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "'Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'" *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 356 (5th Cir. 2010) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)) (alterations omitted). "[D]istrict courts should apply Rule 403 sparingly." *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008).

---

[13]R. Doc. No. 181-1, at 5.

**B.    The OVID Safety Inspection**

With respect to the OVID safety inspection, the low threshold for relevance pursuant to Rule 401 is satisfied. On its face, the document states that the DEEPWATER NAUTILUS had out-of-service radar and that during drilling operations there was no routine radar operation or lookout.[14] The document also recommended that Shell fix the radar and develop policies and procedures for "radar operation and monitoring."[15] Accordingly, the document could support a finding that before the incident, Shell thought that it should have functioning radar and a lookout while the DEEPWATER NAUTILUS was engaged in drilling operations. That fact could be of consequence to a finding of fault on the part of Shell. Accordingly, at this stage of the proceedings the OVID safety inspection appears to be relevant.

With respect to whether the OVID safety inspection should be excluded pursuant to Rule 403, the question is premature. Certainly, the parties vigorously dispute the significance of the document. According to Shell, it was the result of an "experimental procedure" to develop an inspection rubric for a drilling rig like the DEEPWATER NAUTILUS.[16] Tesla and International dispute this account as "post-*hoc* revisionism"[17] or "revisionist history."[18] The Court will be in a better position during trial to decide whether the probative value of the OVID safety inspection is *substantially* outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Accordingly, Shell's motion with respect to the OVID safety inspection is denied without prejudice to its right at trial to renew the objection pursuant to Rule 403.

---

[14] R. Doc. No. 188-1, at 1.
[15] R. Doc. No. 188-1, at 1.
[16] R. Doc. No. 181-1, at 2-4.
[17] R. Doc. No. 188, at 2.
[18] R. Doc. No. 198, at 6.

**C.     The SIMOPS Plan**

Shell contends that the SIMOPS plan is irrelevant because it only applies to "vessels owned or operated by Transocean and/or its subsidiaries," and only within a 500-meter zone of the DEEPWATER NAUTILUS.[19] Because the M/V INTERNATIONAL THUNDER and the M/V LADY JOANNA were independent vessels not owned or operated by Transocean or by Shell, and because apparently no party contends that either vessel came within 500 meters of the DEEPWATER NAUTILUS, Shell argues that the SIMOPS plan on its face does not govern either Shell's conduct or the conduct of defendants with respect to the incident and the plan should therefore be excluded from trial.[20]

Tesla and International concede that the SIMOPS plan does not directly apply because the INTERNATIONAL THUNDER and the LADY JOANNA did not engage in simultaneous operations *with* Shell or Transocean.[21] Instead, Tesla and International contend that the SIMOPS plan is relevant to establishing Shell's knowledge of the risk posed by any vessels, whether under Shell's control or not, operating near the DEEPWATER NAUTILUS, and particularly vessels operating within the spread of its mooring pattern.[22] According to defendants, if Shell was aware of the danger of its own vessels operating within the anchor pattern of the DEEPWATER NAUTILUS and had safety procedures in place with respect to those vessels, then that fact could make Shell's precautions with respect to other vessels (or alleged lack thereof) seem more or less reasonable.[23]

---

[19] R. Doc. No. 188-1, at 5-6..
[20] R. Doc. No. 181-1, at 5-6.
[21] R. Doc. No. 188, at 8 ("Defendants do not suggest that simultaneous operations were taking place on November 2, 2012 . . . ."); R. Doc. No. 198, at 8 ("[International] does not dispute that it was not engaged in simultaneous operations with Shell at all relevant times.").
[22] R. Doc. No. 188, at 8; R. Doc. No. 198, at 8.
[23] R. Doc. No. 188, at 8; R. Doc. No. 198, at 8-9.

5

The Court finds that on the present state of the record, the SIMOPS plan satisfies the low threshold for relevance.

With respect to exclusion pursuant to Rule 403, the Court again concludes that the question is premature. The Court will be in a better position during trial to decide whether the probative value of the SIMOPS plan is *substantially* outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Accordingly, Shell's motion with respect to the SIMOPS plan is denied without prejudice to its right at trial to renew the objection pursuant to Rule 403.

For the foregoing reasons,

**IT IS ORDERED** that Shell's motion is **DENIED** without prejudice to its right at trial to renew its evidentiary objections pursuant to Rule 403 of the Federal Rules of Evidence.

New Orleans, Louisiana, May 7, 2015.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**