**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHELL OFFSHORE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6278** |
| **TESLA OFFSHORE, L.L.C., ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] to exclude expert testimony filed by defendant, Tesla Offshore LLC ("Tesla"), and a motion[2] to exclude expert testimony filed by defendants, International Offshore Services, L.L.C. and International Marine, LLC (collectively, "International"). Oppositions have been filed by all parties.[3] The motions are granted in part and denied in part as set forth herein.

## BACKGROUND

For the purposes of deciding these motions, the material facts are straightforward and undisputed. Tesla time-chartered the M/V INTERNATIONAL THUNDER from International for the purpose of conducting an underwater archeological survey of the seafloor.[4] Tesla installed surveying equipment on the THUNDER, including a sonar "towfish" ("fish"), which was an 89" metal tube towed by a winched cable.[5] On November 2, 2012, while the "fish" was deployed from and being pulled by the THUNDER at the end of 14,000 feet of cable, the fish hit a mooring line holding in place the DEEPWATER NAUTILUS, a drilling rig owned by plaintiff, Shell Offshore,

---

[1] R. Doc. No. 174. Tesla erroneously filed a memorandum in support of its motion without filing the motion itself.
[2] R. Doc. No. 180.
[3] R. Doc. Nos. 156, 157.
[4] *See* R. Doc. No. 152-1, at 1-2; R. Doc. No. 156-7, at 1; R. Doc. No. 157-3, at 1.
[5] *See* R. Doc. No. 152-1, at 1-3; R. Doc. No. 156-7, at 1-2; R. Doc. No. 157-3, at 1-2.

1

Inc. ("Shell").[6] This case arises out of that alleged allision.

## STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be

---

[6]*See* R. Doc. No. 152-1, at 4; R. Doc. No. 156-7, at 2; R. Doc. No. 157-3, at 3.


assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist

the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

## ANALYSIS

Collectively, the motions before the Court seek to exclude or limit the testimony of seven different witnesses on a variety of different grounds.

**A.     Ray Ayers**

Tesla moves to exclude the testimony of Ray Ayers ("Ayers"), an engineer retained by Shell to opine regarding the cause of the mooring line failure.[7] In arriving at his expert opinion, Ayers examined the damaged mooring line, drew conclusions utilizing his experience with causes of mooring line failure and his observation of the line's physical condition, reviewed logs of the mooring line tension, and rejected other possible physical causes based on available information.[8] Ayers opines that the cause of the damage to the DEEPWATER NAUTILUS mooring line "is more likely than not the tow rope for the M/V International Thunder sonar towed fish assembly."[9]

Tesla's makeweight criticism of Ayers' methodology is not a sufficient basis for excluding his entire expert testimony.[10] However, Tesla does raise one non-spurious argument with respect to

---

[7] R. Doc. No. 174, at 6.
[8] R. Doc. No. 174-2, at 4-10.
[9] R. Doc. No. 174-2, at 10.
[10] For example, Ayers testified at his deposition that his methodology is "the scientific method" in which "you look at evidence and you try to come up with hypotheses for why this

a portion of the report in which Ayers states that he "found the report (Exhibit 136) of Cliff Hills of Bridon, who inspected the rope damage to be credible."[11] Tesla moves to exclude that portion of Ayers' testimony because Cliff Hills "is not listed as an expert or witness."[12] Shell responds that Ayers can rely on Hills' report because experts routinely rely on the reports of other experts.[13] However, Ayers does not state that he relied on Hills' report; rather, he merely states that he found Hills' report to be credible.[14] Furthermore, Hills is not listed as a witness in the pretrial order[15] and Shell does not explain how the Hills report, itself, will be admissible at trial or how Ayers can permissibly opine regarding the credibility of a non-testifying expert's written report. Accordingly, Tesla's motion as to Ayers should be granted with respect to Ayers' opinion that Hills' report is credible. The motion is denied as to Ayers in all other respects.

**B.     Holly Sharp**

Tesla moves to exclude Holly Sharp ("Sharp"), a CPA "hired by Shell to evaluate its damage claim."[16] Tesla asserts that Sharp (1) "has very limited knowledge of the drilling business, and is not familiar with the types of expenses and costs incurred in the drilling of a well," and (2) relied on

---

condition occurred. And so you work on trying to rule out certain hypotheses that couldn't pass the mustard. . . . And then you get left with the hypothesis that has the strongest potential for being the right thing." R. Doc. No. 174-1, at 3. Tesla's criticism of this explanation as a "process of elimination, and not a specific theory or technique as required by *Daubert*," R. Doc. No. 174, at 7, is rejected. The Court likewise rejects Tesla's cursory assertion that Ayers "performed no forensic testing and has no background in accident reconstruction" as bases for excluding his opinions. R. Doc. No. 174, at 8. Such matters are subjects for cross-examination.

[11]R. Doc. No. 174-2, at 10.
[12]R. Doc. No. 174, at 8.
[13]R. Doc. No. 184, at 14.
[14]R. Doc. No. 174-2, at 10.
[15]R. Doc. No. 171.
[16]R. Doc. No. 174, at 14.

5

erroneous assumptions provided by Shell's counsel regarding such expenses and costs.[17] However, Tesla does not suggest that Sharp failed to reliably apply "accepted accounting principles," as she asserts in her report.[18] *See Wellogix, Inc. v. Accenture, L.L.P.*, 715 F.3d 867, 881-82 (5th Cir. 2013) (holding, in a case involving theft of specialized oil-and-gas-industry software trade secrets, that a general computer sciences expert "did not need particular expertise in the oil-and-gas industry, or complex services procurement, to help the jury understand software concepts and terms"). Furthermore, the Court will be in a better position to determine at trial whether Sharp's factual assumptions are supported by the record. *See Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) ("Generally, the 'fact-finder is entitled to hear [an expert's] testimony and decide whether . . . the predicate facts on which [the expert] relied are accurate.'") (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)). Tesla's motion as to Sharp is denied at this stage of the proceedings, subject to Tesla's right to re-urge specific objections to Sharp's trial testimony.

**C.    The Marine Experts**

Finally, Tesla and International move to exclude or limit the testimony of each other's marine experts, as well as the marine experts of Shell and third-party defendant, Sea Eagle Fisheries, Inc. ("Sea Eagle"), for various reasons. The motions address the testimony of Ken Parris and Andre LeGoubin, witnesses for Shell;[19] Marc Fazioli, a witness for International;[20] Maurice Ryan, a witness for Sea Eagle;[21] and Gregory Daley, a witness for Tesla.[22] At least one party contends that each of

---

[17] R. Doc. No. 174, at 14.
[18] R. Doc. No. 174-8, at 6.
[19] R. Doc. No. 174, at 8-14; R. Doc. No. 180-1, at 3-7.
[20] R. Doc. No. 174, at 15-16; R. Doc. No. 180-1, at 3-4.
[21] R. Doc. No. 174, at 16-17; R. Doc. No. 180-1, at 3-4.
[22] R. Doc. No. 180-1, at 180-1, at 8-9.

6

these witnesses should be excluded or limited due to lack of expertise in sonar surveying.[23]

"Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss*, 571 F.3d at 452. "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* "A lack of specialization should generally go to the weight of the evidence rather than its admissibility . . . ." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). "Thus 'an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight.'" *Id.* at 168-69 (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

As presented by the parties, these arguments are threadbare. In its motion, International does little more than globally contend that "any and all of the other parties' experts in this case" lack sufficient relevant experience in sonar surveying.[24] But even if the opposing party's experts lack expertise in sonar surveying, a finding the Court does not make, International does not point to any opinions that would require such expertise, rather than expertise in marine operations generally.

Tesla discusses the experts individually, contending that the testimony of Le Goubin,[25]

---

[23]R. Doc. No. 174, at 10 ("Le Goubin has absolutely no specialized knowledge of Tesla's sonar surveying or how those operations are conducted."); R. Doc. No. 174, at 13 ("Moreover, Parris' complete lack of knowledge regarding sonar surveying operations and crewing warrants precluding any opinions and/or testimony about Tesla entirely."); R. Doc. No. 174, at 15 ("Like the other marine experts in this case with no survey experience, [Fazioli's] testimony concerning survey operations and the practices and procedures of survey companies, such as Tesla, should be limited."); R. Doc. No. 174, at 17 ("Ryan has no experience in the management or operations of deepwater sonar surveying."); R. Doc. No. 180-1, at 4 ("Not one of the experts retained by the other parties in this matter has any experience in surveying work . . . .").

[24]R. Doc. No. 180-1, at 4.

[25]R. Doc. No. 174, at 8-10.

Fazioli,[26] Parris, and Ryan with respect to Tesla's surveying operations should be excluded based on a purported lack of expertise in surveying.[27] The Court remains unpersuaded that their opinions require such expertise.[28] This case arises out of an incident involving vessels at sea, and the challenged experts are undisputedly qualified with respect to marine operations. Although the INTERNATIONAL THUNDER happened to be engaged in sonar surveying, the Court declines to hold categorically that *only* an expert in sonar surveying can comment on Tesla's actions in this case. *See Wen Chyu Liu*, 716 F.3d at 168-69 ("[A] lack of specialization does not affect the admissibility of the opinion, but only its weight."). The Court will be in a better position at trial, in light of a developed factual record and testimony establishing each expert's respective qualifications, to decide specific objections to specific opinions purportedly outside the scope of any particular witness's expertise.[29]

Next, International moves pursuant to Rule 403 to prevent two of Shell's experts, LeGoubin and Parris, from offering purportedly cumulative testimony.[30] The Court may "exclude relevant evidence if its probative value is *substantially* outweighed by a danger of . . . *needlessly* presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). The Court will be in a better position at trial to assess whether any testimony is cumulative. The motion is denied at this time.

International also moves to prohibit Daley and Ryan from "using legally conclusory

---

[26]R. Doc. No. 174, at 15-16.
[27]R. Doc. No. 174, at 16-17.
[28]Accordingly, the Court does not at this time decide the qualifications of any particular witness.
[29]The Court also denies these motions to the extent that they assert other purported lack of necessary experience, such as experience in "accident reconstruction or investigation," R. Doc. No. 174, at 12, with leave to re-urge specific objections at trial.
[30]R. Doc. No. 180-1, at 5.

terminology that seems clearly calculated to suggest to the jury a finding of gross negligence so as to void Sea Eagle's indemnity obligations to International."[31] Specifically, International moves to preclude the use of the words "'willful,' 'reckless,' and 'careless.'"[32] Such argument is apparently based on a contractual provision which states that "no indemnifying party under this agreement shall be liable to an indemnified party to the extent of claims caused by the indemnified party's gross negligence or willful misconduct."[33]

International cites cases prohibiting experts from offering legal conclusions to be decided by the jury,[34] but it does not cite cases prohibiting experts from using words "calculated to suggest to the jury" a particular legal conclusion. "Depending on how the actual questions and answers are framed," such testimony using the words "reckless" or "careless" "might or might not be objectionable–a circumstance this Court cannot predict in a vacuum." *See In re Actos*, No. 11-2299, 2014 WL 120973, at *12 (W.D. La. Jan 10, 2014). Although the Court has significant reservations about whether any such testimony would assist the jury in its deliberations, the motion is denied at this time with respect to the words "reckless" or "careless," reserving the right to re-urge an objection at trial. However, the motion is granted with respect to testimony that any conduct was "willful." The Court finds that such testimony would not assist the jury in its deliberations as the jury is capable of making such a determination without the assistance of such expert testimony and the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.[35]

International also contends that Daley's testimony should be excluded because he "reached

---

[31]R. Doc. No. 180-1, at 8.
[32]R. Doc. No. 180-1, at 8.
[33]R. Doc. No. 73-1, at 8 (emphasis omitted).
[34]R. Doc. No. 180-1, at 6-7.
[35]*See* Fed. R. Evid. 403, 702(a).

9

definitive conclusions on issues where the testimony or other evidence conflicted or was in dispute."[36] According to International, Daley "admitted in his deposition that he based various opinions on his own determination of which witness he found to be more credible."[37] First, the Court notes that "when facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts." *Moore*, 547 F. App'x at 515 (alteration and quotation marks omitted). "Generally, the 'fact-finder is entitled to hear [an expert's] testimony and decide whether . . . the predicate facts on which [the expert] relied are accurate.'" *Id.* (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)).[38] Second, the purported "credibility determination" International refers to was Daley's consideration of Shell's OVID safety inspection, which the Court has already held to be relevant.[39] The basis of Daley's opinion is a proper subject for cross-examination, but not a basis for excluding his opinion entirely. Any such argument is rejected at this time.

International also asserts that Daley, Tesla's expert, "met with unspecified Tesla employees whom he could not name, and who he purports gave him additional information on which he based his conclusions exculpating Tesla."[40] International contends that Daley's opinions should be stricken because of his presumed reliance on such "unsworn, selective, and presumably biased information."[41] However, International does not articulate a single specific opinion or piece of

---

[36]R. Doc. No. 180-1, at 8.
[37]R. Doc. No. 180-1, at 8.
[38]The cases cited by International, which prohibit an expert witness from opining about the truthfulness of a witness, are not apposite. R. Doc. No. 180-1, at 9.
[39]R. Doc. No. 216, at 4 (deferring until trial an objection to the document pursuant to Rule 403).
[40]R. Doc. No. 180-1, at 10.
[41]R. Doc. No. 180-1, at 10.

10

information Daley allegedly improperly derived from Tesla employees; the motion is too abstract to be granted and should be denied. Any lack of specificity can be brought to the forefront through cross-examination.

Finally, Tesla and International collectively contend that Parris, LeGoubin, and Daley should be precluded from offering legal conclusions.[42] For example, International contends that neither Parris nor Le Goubin should be permitted to opine whether the captain of the INTERNATIONAL THUNDER violated the COLREGS.[43] International's argument is surprising in light of the fact that, as Shell points out, even International's hired expert opines regarding the COLREGS.[44]

This Court has previously held that expert testimony that a party "violated OSHA regulations ***and that such violations constitute unseaworthiness and negligence are impermissible legal conclusions***." *In re Midland Enters., Inc.*, No. 00-3750, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.) (emphasis added). Nonetheless, at this time, the Court finds that testimony analyzing the conduct of the various parties with respect to various applicable rules and regulations may assist the trier of fact without crossing the line into impermissible legal conclusions. The Court will be in a better position at trial to decide specific objections. *Cf. Mobil Exploration & Producing v. A-Z Grant Int'l Co.*, 91-3124, 1996 WL 194931, at *3 (E.D. La. Apr. 22, 1996) (Fallon, J.).[45]

---

[42]R. Doc. No. 174, at 12; R. Doc. No. 180-1, at 7-8.
[43]R. Doc. No. 180-1, at 7. No party has disputed that the COLREGS applied to the INTERNATIONAL THUNDER.
[44]R. Doc. No. 184, at 10.
[45]As the court explained in *Mobile Exploration*:
    Plaintiffs are correct that otherwise admissible expert testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). However, Rule 704 "does not open the door to all opinions" and is not "intended to allow a witness to give legal conclusions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1310-11 (5th Cir. 1985). As the Fifth Circuit

11

Accordingly, the motion is denied at this time except with respect to testimony and evidence related to the applicability of the COLREGS to the DEEPWATER NAUTILUS. For reasons set forth in the contemporaneous order and reasons addressing Shell's *in limine* motion regarding navigational statutes, the COLREGS did not in fact apply to the DEEPWATER NAUTILUS.[46]

Accordingly, in light of the foregoing,

**IT IS ORDERED** that Tesla's motion *in limine* is **GRANTED** with respect to Ayers' credibility opinion regarding the Hills report and **DENIED** and/or **DEFERRED** in all other respects.

---

has explained, "the major surviving exception" to Rule 704(a) is that "an expert may not express an opinion on a conclusion of law." *United States v. Lueben*, 812 F.2d 179, 193-84 (5th Cir. 1987).

In the Court's opinion, Hill's proposed testimony regarding the existence and applicability of certain regulations–Coast Guard's regulations, CFRs–to the Rowan Paris and whether the alleged mislabeling was consistent or inconsistent with these regulations does not amount to a legal conclusion. However, whether such action violated the terms of the contract or whether such action caused the alleged damage is a conclusion best left for the jury.

1996 WL 194931, at *3. Likewise, as the court explained in *In re Actos*, "[a]n expert, it is undisputed, cannot instruct the jury as to applicable law, however, [he] can rely upon his understanding of rules and regulations governing his industry when formulating his opinion." 2014 WL 120973, at 12.

[46]Tesla's motion is, therefore, denied as moot with respect to Parris's expert opinion that the COLREGS did not apply to the DEEPWATER NAUTILUS. R. Doc. No. 174, at 12-13. Parris's proposed testimony regarding the applicability of Safety and Environmental Management Systems ("SEMS") regulations, R. Doc. No. 174, at 11-12, is governed by the Court's separate order and reasons addressing SEMS-related matters. R. Doc. No. 224.

**IT IS FURTHER ORDERED** that International's motion *in limine* is **GRANTED** with respect to expert testimony by Daley and Ryan that any conduct was "willful" and **DENIED** and/or **DEFERRED** as set forth herein.

New Orleans, Louisiana, September 28, 2015.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**