**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHELL OFFSHORE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6278** |
| **TESLA OFFSHORE, L.L.C., ET AL.** | **SECTION I** |

**ORDER AND REASONS**

Before the Court is a motion[1] filed by plaintiff, Shell Offshore Inc. ("Shell") to exclude expert testimony concerning the alleged application of navigational statutes and regulations to the DEEPWATER NAUTILUS. Oppositions have been filed by defendant, Tesla Offshore LLC ("Tesla"),[2] and defendants, International Offshore Services, L.L.C. and International Marine, LLC (collectively, "International").[3] The motion is granted in part and denied in part as set forth herein.

**BACKGROUND**

For the purpose of deciding this motion, the material facts are straightforward and undisputed. Tesla time-chartered the M/V INTERNATIONAL THUNDER from International for the purpose of conducting an underwater archeological survey of the seafloor.[4] Tesla installed surveying equipment on the THUNDER, including a sonar "towfish" ("fish"), which was an 89" metal tube towed by a winched cable.[5] On November 2, 2012, while the "fish" was deployed from and being pulled by the THUNDER at the end of 14,000 feet of cable, the fish hit a mooring line

---

[1]R. Doc. No. 175.

[2]R. Doc. No. 189. Third-party defendant, Sea Eagle Fisheries, Inc. ("Sea Eagle"), filed an opposition adopting Tesla's opposition. R. Doc. No. 204.

[3]R. Doc. No. 197.

[4]*See* R. Doc. No. 152-1, at 1-2; R. Doc. No. 156-7, at 1; R. Doc. No. 157-3, at 1.

[5]*See* R. Doc. No. 152-1, at 1-3; R. Doc. No. 156-7, at 1-2; R. Doc. No. 157-3, at 1-2.

holding in place the DEEPWATER NAUTILUS, a mobile offshore drilling unit (“MODU”) owned and operated by Shell and Transocean.[6] This case arises out of that alleged allision, as do many evidentiary disputes.

**ANALYSIS**

Shell moves to exclude specific opinions offered by experts retained by Tesla and International regarding the applicability of certain statutory, regulatory, industry, or prudential standards to the DEEPWATER NAUTILUS. Shell does not dispute that Fazioli (International’s expert) and Daley (Tesla’s expert) are qualified to opine on the marine operations of the INTERNATIONAL THUNDER, or marine operations in general.[7] Rather, Shell contends that neither expert is qualified specifically with respect to marine operations of MODUs such as the DEEPWATER NAUTILUS[8] and, therefore, Shell moves to exclude certain opinions purportedly requiring such expertise.[9]

Rule 702 of the Federal Rules of Evidence allows testimony by “[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education.” But “Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.” *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). “Differences in expertise bear chiefly on the weight to be

---

[6]*See* R. Doc. No. 152-1, at 4; R. Doc. No. 156-7, at 2; R. Doc. No. 157-3, at 3. “Shell had contracted with Transocean to provide the NAUTILUS drilling rig for operations in the Gulf of Mexico.” R. Doc. No. 171, at 26. “Shell is responsible under its contract with Transocean for Transocean’s fault of the [DEEPWATER] NAUTILUS, which caused or contributed to the incident.” R. Doc. No. 171, at 28.

[7]R. Doc. No. 175-1, at 4, 5.

[8]R. Doc. No. 175-1, at 4-6.

[9]International complains about the timeliness of Shell’s motion. R. Doc. No. 197, at 6. Under these circumstances, however, the Court declines to abdicate its duty to determine the applicable law solely on the basis that Shell filed the instant motion when it did.

assigned to the testimony by the trier of fact, not its admissibility." *Id.* Furthermore, "lack of specialization should generally go to the weight of the evidence rather than its admissibility and vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) (alterations and internal quotation marks omitted). With this guidance in mind, and without deciding the parameters of Fazioli's or Daley's expertise or qualifications, the Court considers the specific opinions Shell seeks to exclude.

**1) Coast Guard Notice Requirements**

First, Shell contends that Fazioli is not qualified to opine "as to what MODUs are required to report to the Coast Guard for purposes of Notices to Mariners, whether by regulation or industry custom."[10] Having reviewed that portion of Fazioli's expert report and his articulated basis for that opinion, as well as International's opposition,[11] the Court is not persuaded at this time that Fazioli exceeds his expertise in general marine operations by offering that opinion. Because purported lack of qualification is the only basis for excluding the opinion articulated by Shell in its motion, the *in limine* motion is denied. Cross-examination is the proper remedy to address Shell's concerns.

**2) Automatic Identification System/Radar Requirements**

Second, Shell contends that neither Fazioli nor Daley are qualified to opine regarding whether the DEEPWATER NAUTILUS was required to have an Automatic Identification System ("AIS") or radar.[12] Fazioli opines that the DEEPWATER NAUTILUS "was not required by statute

[10]R. Doc. No. 175-1, at 4-5; R. Doc. No. 175-3, at 3-4.
[11]R. Doc. No. 197, at 8-9.
[12]R. Doc. No. 175-1, at 4, 9-11,

to be equipped with either AIS or Radar equipment," but that "there was certainly an industry standard that both systems would be installed on" MODUs.[13] Daley opines that AIS and radar "were available to the NAUTILUS for collision avoidance,"[14] although they were not mandated,[15] and that having AIS and radar "would be a good practice," but not an industry standard.[16]

As neither Fazioli nor Daley opine that federal regulations *required* AIS or radar on the DEEPWATER NAUTILUS, Shell's motion as to that issue is moot.[17] With regard to Fazioli's and Daley's opinions that the DEEPWATER NAUTILUS should have had AIS or radar, although these systems were not mandated, the Court is not persuaded that such opinions require specific expertise in "the navigational rules and regulations which apply to moored NSP MODUs." Shell concedes Fazioli's and Daley's qualifications with respect to marine operations in general. Any lack of specialization appears to go to the weight, rather than the admissibility, of their opinions. *See Wen Chyu Liu*, 716 F.3d at 168-69. Accordingly, Shell's *in limine* motion as to such opinions is denied.

**3) Opinion Testimony That the COLREGS Applied to the DEEPWATER NAUTILUS**

Third, Shell argues that Fazioli and Daley are not qualified to opine whether the International Rules for the Prevention of Collisions at Sea, commonly referred to as the "COLREGS,"[18] applied

---

[13]R. Doc. No. 175-3, at 2.

[14]R. Doc. No. 175-5, at 2.

[15]R. Doc. No. 175-5, at 3.

[16]R. Doc. No. 175-4, at 11.

[17]Tesla asserts that AIS and radar were required pursuant to the International Convention for the Safety of Life at Sea. R. Doc. No. 189, at 8. Tesla's own expert, Daley, does not share that opinion and, accordingly, Tesla's assertion is irrelevant to Shell's motion to exclude or limit Daley's testimony.

[18]*See* 33 U.S.C. § 1602; *see also* 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 14-2 (5th ed. 2014) ("An internationally accepted system of collision regulations have been developed by treaty, the International Regulations for Preventing Collisions at Sea (COLREGS), a

to the DEEPWATER NAUTILUS while it was moored and drilling. Fazioli opines that he "know[s] of no U.S. regulation that directly exempts vessels such as MODU DEEPWATER NAUTILUS from complying with" the COLREGS.[19] Daley opines that "the COLREGS . . . set the standards in international waters."[20]

The Court need not address either Fazioli's or Daley's qualifications to render such opinions because expert testimony purporting to establish which rules or regulations actually applied to the incident in this case is inappropriate. *See Askanase v. Fatjo*, 130 F.3d 657, 673 ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.") (quotation omitted); *In re Actos*, No. 11-2299, 2014 WL 120973, at *11 (W.D. La. Jan 10, 2014) ("There is no question this Court will not allow Dr. Kessler–or any expert or attorney–to instruct the jury as to what the applicable law in this case is.") (emphasis omitted). Accordingly, neither Fazioli nor Daley will be permitted at trial to offer the legal conclusion whether or not the COLREGS applied with the force of law to the DEEPWATER NAUTILUS; such legal instruction to the jury is the role of the Court.

**4) Applicability of the COLREGS to the DEEPWATER NAUTILUS**

On top of arguing that neither Fazioli nor Daley are qualified to opine on the subject, Shell argues that the COLREGS in fact did not apply to the DEEPWATER NAUTILUS at the time of the incident.[21] Although the applicable law is sparse, the Court is persuaded by Shell's argument.

---

body of rules accepted by most maritime nations, including the United States.") (footnotes omitted).

[19]R. Doc. No. 175-3, at 5.

[20]R. Doc. No. 175-5, at 2. Although it did not attach this portion of Daley's deposition to its motion, Shell asserts that Daley testified as follows: "Let me say it this way, [the NAUTILUS is not required by law to obey the COLREGS, but it is good seamanship and prudent for them to obey the COLREGS." R. Doc. No. 175-1, at 8-9.

[21]R. Doc. No. 175-1, at 7-9.

No party disputes that the DEEPWATER NAUTILUS was a vessel. *See* 33 C.F.R. § 140.10 ("Mobile offshore drilling unit or MODU means a vessel, other than public vessel of the United States, capable of engaging in drilling operations for exploration or exploitation of subsea resources."). As a matter of federal law, the COLREGS "shall be applicable to, and shall be complied with by–"

> (1) all vessels, public and private, subject to the jurisdiction of the United States, while upon the high seas or in waters connected therewith navigable by seagoing vessels, and
> (2) all other vessels when on waters subject to the jurisdiction of the United States.

33 U.S.C. § 1603.

In *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, the First Circuit interpreted § 1603 and concluded that the statute did not apply the COLREGS to a Panamanian-registered vessel attempting to salvage a sunken vessel sixty miles off the shore of Nantucket Island. *See* 833 F.2d 1059, 1061-62, 1065-66 (1st Cir. 1987). First, because the salvaging vessel was sixty miles off the coast of the United States, it was "on the high seas, in waters not subject to the jurisdiction of the United States," making § 1603(2) inapplicable.[22] *See id.* at 1066. Second, the court read "vessels, public and private, subject to the jurisdiction of the United States" to mean "ships of American registry." *See id.* Therefore, the fact that the salvaging vessel was of Panamanian registry "excluded her, while in international waters, from the sweep of 33 U.S.C. § 1603(1)." *Id.* The First Circuit also concluded that the legislative history "makes it abundantly plain that, in international waters, the COLREGS affect only vessels of U.S. Registry."

[22] *See* Presidential Proclamation No. 5928, 54 Fed. Reg. 777 (Jan. 9, 1989) (declaring that the "territorial sea of the United States henceforth extends to 12 nautical miles from the baselines of the United States determined in accordance with international law").

*Id.* at n.6; *see also id.* at n.7 ("[T]he language of the Act neither requires nor allows us to extend the regulations to foreign flag vessels in international waters.").

Shell contends that the DEEPWATER NAUTILUS is situated identically to the vessel in *Martha's Vineyard* and, therefore, the COLREGS are not applicable pursuant to § 1603(1) or (2). No party disputes that at the time of the incident, the DEEPWATER NAUTILUS was a Vanuatu-flagged vessel operating 72 miles off the coast of the United States in international, not territorial, waters.[23] Consequently, Shell argues, §1603(1) does not apply because the DEEPWATER NAUTILUS was not a vessel "subject to the jurisdiction of the United States" because it was not a "ship[] of American registry." *See id.* Shell next argues that §1603(2) does not apply because the DEEPWATER NAUTILUS was 72 miles off the coast of the United States in international waters, not territorial waters, and therefore not in "waters subject to the jurisdiction of the United States," as that phrase was interpreted in *Martha's Vineyard*. *See id.*

The Court agrees that 33 U.S.C. § 1603 does not apply the COLREGS to the DEEPWATER NAUTILUS. No party has articulated any defect in the reasoning in *Martha's Vineyard* or distinguished its applicability to the facts in this case.[24] Like the vessel in *Martha's Vineyard*, the

---

[23] R. Doc. No. 175-1, at 7.

[24] Tesla argues that the COLREGS should apply to the DEEPWATER NAUTILUS pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 49 U.S.C. 1331(a). R. Doc. No. 189, at 6; R. Doc. No. 212-2, at 6-8. Although *Martha's Vineyard* did not address OCSLA, the Court is not persuaded.

Certainly, the OCSLA "jurisdictional grant is broad, covering a wide range of activity occurring beyond the territorial waters of the states." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (internal quotation marks omitted). But the specific issue presented here is not whether OCSLA authorizes federal regulation of the Outer Continental Shelf or the DEEPWATER NAUTILUS generally. Rather, the question is whether OCSLA should be read in conjunction with § 1603(2) such that international waters above the Outer Continental Shelf are "subject to the jurisdiction of the United States" for the purposes of the applicability of the COLREGS to non-U.S.-flagged vessels. Tesla cites nothing specifically supporting the conclusion

DEEPWATER NAUTILUS (1) is not a ship of American registry and (2) was operating in international waters, not territorial waters. Accordingly, as a matter of federal law, neither § 1603(1) or (2) makes the COLREGS applicable to the DEEPWATER NAUTILUS.

Explaining which navigational requirements actually applied, Shell asserts that the DEEPWATER NAUTILUS was subject to the navigational requirements of Vanuatu, which is a signatory to the International Maritime Organization Code for the Construction and Equipment of Mobile Offshore Drilling Units, ("the MODU Code").[25] Shell provides an excerpt of the MODU Code which reads as follows:

> 14.7 Safety of Navigation
> 14.7.1 The Requirements of the Convention on the International Regulations for Preventing Collisions at Sea [the COLREGS] in force should apply to each unit except when stationary and engaged in drilling operations.
> 14.7.2 Each unit when stationary and engaged in drilling operations should comply with the requirements for the safety of navigation of the coastal State in whose territorial sea or on whose continental shelf the unit is operating.[26]

There is no dispute that the DEEPWATER NAUTILUS was stationary and engaged in drilling operations at the time of the incident; accordingly, pursuant to section 14.7.1, the COLREGS were not applicable to it. Rather, pursuant to 14.7.2, "when stationary and engaged in drilling operations" the DEEPWATER NAUTILUS should have complied "with the requirements for the safety of navigation of the coastal State in whose territorial sea or on whose continental shelf the unit is operation"–that is, the "requirements for the safety of navigation of" the United States.

---

that OCSLA and § 1603(2) should be read together to reach that outcome, and the text of OCSLA itself suggests otherwise. *Cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 217 (1986) ("By its terms, OCSLA must be 'construed in such a manner that the character of the waters above the outer Continental Shelf as high seas . . . shall not be affected.") (quoting 43 U.S.C. § 1332(2)).

[25] R. Doc. No. 175-1, at 7.

[26] R. Doc. No. 175-6, at 1. Although the parties have submitted excerpts of the MODU Code which are formatted differently, all contain this identical text. R. Doc. No. 189-1, at 31.

As Shell points out, for the reasons explained above, United States law did not apply the COLREGS to the Vanuatu-flagged DEEPWATER NAUTILUS while in international waters.[27] *See* 33 U.S.C. § 1603; *Martha's Vineyard*, 833 F.2d at 1066. Accordingly, whatever other "requirements for the safety of navigation" applied to the DEEPWATER NAUTILUS as a matter of United States law, either directly or as incorporated by the MODU Code, the COLREGS were not included. This conclusion comports with the First Circuit's interpretation of § 1603 in *Martha's Vineyard* and avoids a potentially problematic interpretation of the MODU Code that would apply the COLREGS to the DEEPWATER NAUTILUS while stationary and drilling pursuant to section 14.7.2, despite the clear statement in section 14.7.1 that the COLREGS *should not* apply while stationary and drilling.[28]

Accordingly, the Court concludes that the COLREGS were not applicable to the DEEPWATER NAUTILUS at the time of the incident giving rise to this case.

**CONCLUSION**

In light of the foregoing,

**IT IS ORDERED** that Shell's motion is **GRANTED IN PART** with respect to the applicability of the COLREGS to the DEEPWATER NAUTILUS and expert opinion testimony that the COLREGS applied to the DEEPWATER NAUTILUS, and **DENIED** and/or **DEFERRED** as set forth herein.

---

[27]R. Doc. No. 210, at 5.

[28]Such conclusion is also consistent with the regulations cited by the parties. *See* 33 C.F.R. § 143.15; 33 C.F.R. § 146.205.

**IT IS FURTHER ORDERED** that Tesla's motion for leave to file a reply brief is **GRANTED**.

New Orleans, Louisiana, September 28, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**