## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SHELL OFFSHORE, INC.**                                    **CIVIL ACTION**

**VERSUS**                                                            **NO. 13-6278**

**TESLA OFFSHORE, L.L.C., ET AL.**                       **SECTION I**

## ORDER AND REASONS

The Court has received objections to certain exhibits and responses to objections filed by plaintiff, Shell Offshore, Inc. ("Shell"),[1] defendant Tesla Offshore LLC ("Tesla"),[2] and defendants, International Offshore Services, L.L.C. and International Marine, LLC (collectively, "International").[3] The Court notes that absent agreement by the parties, the overruling of an objection to an exhibit is contingent on a proper foundation being established at trial. Considering the objections, the responses, and the applicable law, the Court rules as follows:

**Joint Exhibit 1**: The parties disagree as to the interpretation and significance of portions of this exhibit, which purports to be Shell's drilling permit application. The objections by Tesla and International are deferred until trial, at which time a foundation can be laid and the Court will be in a better position to understand the purpose for which the exhibit is offered and the factual dispute regarding its significance.

**Joint Exhibits 16, 30, and 39**: Shell objects pursuant to Rule 403 to the OVID report, the Transocean SIMOPS document, and the SEMS interface bridging agreement.[4] For the reasons set

---

[1]R. Doc. No. 236.
[2]R. Doc. No. 233.
[3]R. Doc. No. 239.
[4]R. Doc. No. 236, at 1-3, 5-6

forth in the Court's prior orders and reasons denying motions *in limine* to exclude these documents and deferring the issue until trial,[5] the Court defers these objections until trial.

**Joint Exhibit 18**: Shell objects[6] to this post-accident document on the basis of Rule 407 of the Federal Rules of Evidence, which states that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove" negligence, culpable conduct, or a need for a warning or instruction. However, such evidence is admissible "for another purpose, such as impeachment or–if disputed—proving . . . the feasibility of precautionary measures."*Id.* Tesla responds that the exhibit does not describe actual subsequent remedial measures, but rather is probative of the feasibility of such measures, which is admissible pursuant to Rule 407.[7] International responds that the exhibit does not reflect a subsequent remedial measure, but rather an admissible post-accident analysis.[8]

Shell's objection to Joint Defense Exhibit 18 is overruled. The document does not reflect any actual subsequent remedial measures that were taken. Rather, it reflects post-accident analysis, which is not barred by Rule 407. *See Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 430 (5th Cir. 2006) (holding that Rule 407 does not exclude post-accident analysis).

**Joint Exhibit 22**: Shell objects to this document, which describes a safety zone around a different non-MODU drilling rig in the Gulf of Mexico, as irrelevant and inadmissible.[9] Tesla and International contend that the document is relevant with respect to the steps Shell could have taken

---

[5]*See* R. Doc. No. 216, at 4; R. Doc. No. 224, at 7.
[6]R. Doc. No. 236, at 2.
[7]R. Doc. No. 248, at 3-4.
[8]R. Doc. No. 252, at 7-8.
[9]R. Doc. No. 236, at 3.

to mark or protect the mooring system of the DEEPWATER HORIZON.[10]  This objection is deferred until trial.

**Joint Exhibits 25 and 26**: Shell objects on the basis of relevance to the admission of Joint Exhibits 25 and 26 which appear to be documents addressing Shell's general safety goals or policies.[11] Shell contends that neither document is relevant because neither addresses marine operations or "process safety protocols applicable specifically to semi-submersible drilling rigs."[12] Tesla responds that these are documents created by Shell relevant to Shell's general safety practices.[13]

The Court will not be able to determine outside the context of trial whether these documents have some marginal probative value. Accordingly, these objections are deferred until trial.

**Joint Exhibit 27**: Shell objects[14] to one portion of this email chain on the basis of Rule 407 of the Federal Rules of Evidence. The objection is overruled; the objected-to portion of the email does not describe any actual subsequent remedial measures that were taken. Rather, it reflects post-accident analysis, which is not barred by Rule 407. *See Brazos River Authority*, 469 F.3d at 430.

Shell objects to the remainder of the email chain for lack of authentication and hearsay.[15] The Court defers this portion of this objection until trial; the recipient of the email potentially may be able to testify based on his personal knowledge that he received the email, and the forwarded portions of the email chain may potentially be admissible as statements by Shell personnel or for

---

[10]R. Doc. No. 248, at 4; R. Doc. No. 252, at 7.
[11]R. Doc. No. 236, at 4.
[12]R. Doc. No. 236, at 4.
[13]R. Doc. No. 248, at 5-6.
[14]R. Doc. No. 236, at 2.
[15]R. Doc. No. 236, at 5.

3

purposes other than the truth of the matters asserted therein.

**Joint Exhibit 28**: Joint Exhibit 28 is the SEMS regulations. The Court has preliminarily concluded that the SEMS regulations do not appear to be pertinent to the navigational safety issues in this case and that "there is no apparent evidentiary basis for admission of the SEMS regulations themselves as exhibits at trial."[16] Consistent with the Court's prior holding, Shell's objects to this exhibit[17] and Tesla does not challenge that objection.[18] Accordingly, this objection is sustained as unopposed.

The Court notes its prior holding that "documents prepared by Shell and Transocean *pursuant* to the SEMS regulations appear to be admissible, and some general testimony regarding the SEMS regulations, subject to cross-examination, may be appropriate in order to provide context for the jury."[19]

**Joint Exhibit 32**: International objects to the admission of joint exhibit 32, a series of photographs, "without the laying of the proper foundation and authentication."[20] The objection is deferred until trial, at which time International can object to the foundation and authentication of the exhibit.

**Shell Exhibits 1 and 61**: Shell Exhibit 1 is an in globo collection of 11,000 pages of documents allegedly establishing Shell's damages; Shell Exhibit 61 is a summary of those damages. Tesla and International object to both. With respect to Exhibit 1, Tesla complains that the 11,000 pages "have not been specifically identified, they lack foundation and authenticity and they will

---

[16]R. Doc. No. 224, at 5.
[17]R. Doc. No. 236, at 5.
[18]R. Doc. No. 248, at 7.
[19]R. Doc. No. 224, at 5.
[20]R. Doc. No. 239, at 2.

confuse the jury."[21] Tesla also argues that such documents "have not been organized or presented in any clear, understandable manner."[22] In a similarly cursory fashion, International objects to Shell Exhibit 1 "on the basis of hearsay, lack of foundation, lack of relevance, lack of authentication, and the likelihood that the introduction of these *in globo* documents will lead to confusion of the jury."[23]

With respect to Shell Exhibit 61, the Rule 1006 summary of Shell Exhibit 1, Tesla objects "that the damage summary is confusing, misleading and will not provide an efficient means of explaining the damage testimony to the jury," and that the "invoices are not categorized and summarized in a logical and easy to follow manner."[24] International leaves open the possibility of "possible agreement among the parties on an appropriate form of a summary," but objects to Shell's Exhibit 61 as "overly simplistic, founded on hearsay, and potentially misleading to the jury."[25]

With respect to Shell Exhibit 61, Shell contends that it is an appropriate and accurate "summary" of Exhibit 1 pursuant to Rule 1006, and that defendants "are free to create their own summary" organized differently.[26] As to Shell Exhibit 1, the documents which are summarized by Shell Exhibit 61, Shell contends they are admissible business records and that the parties have stipulated that "invoices that form the basis of Shell's damage claim were incurred and paid in the ordinary course of business."[27]

Rule 1006 of the Federal Rules of Evidence states that:

The proponent may use a summary, chart, or calculation to prove the content of

---

[21] R. Doc. No. 233, at 4.
[22] R. Doc. No. 233, at 4.
[23] R. Doc. No. 239, at 2.
[24] R. Doc. No. 233, at 6.
[25] R. Doc. No. 239, at 3.
[26] R. Doc. No. 250, at 9.
[27] R. Doc. No. 250, at 8.

5

voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the Court may order the proponent to produce them in court.

The Court has "broad discretion under Federal Rule of Evidence 1006" to admit summaries. *See Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 314 (5th Cir. 2010); *see also United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001) (explaining that Rule 1006 is "broadly interpreted").

The writings that the summary intends to summarize must themselves be admissible. *See United States v. Jones*, 664 F.3d 966, 976 & n.1 (5th Cir. 2011). Further, summaries must "accurately reflect the underlying records," but "they cannot be excluded simply because they *might* be inaccurate." *See Right of Way Maint. Co. v. Gyro-Trac, Inc.*, 303 F. App'x 229, 230 (5th Cir. 2008) (citations and internal quotation marks omitted). A Rule 1006 summary can summarize voluminous writings whether or not those writings are actually admitted at trial. *See Jones*, 664 F.3d at 976 (concluding that "evidence underlying a summary need not actually be admitted") (citing *United States v. Valencia*, 600 F.3d 389, 417 (5th Cir. 2010)); *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985) (rejecting argument that Rule 1006 does not apply to summaries of voluminous writings already admitted into evidence). "A summary chart that meets the requirements of Rule 1006 is itself evidence and no [limiting] instruction is needed." *United States v. Williams*, 264 F.3d 561, 575 (5th Cir. 2001). However, the Fifth Circuit has approved of use of an instruction that Rule 1006 summaries "'are valid only to the extent that they accurately reflect the underlying supporting evidence.'" *See United States v. Whitfield*, 590 F.3d 325, 365 (5th Cir. 2009).

Eleven thousand pages of invoices underlying Shell's damages claims cannot be conveniently examined in court. Accordingly, a Rule 1006 summary of those documents is appropriate and potentially admissible. Although they dispute the presentation, neither International

nor Tesla has contended that Shell's Exhibit 61 inaccurately summarizes the underlying exhibits.

Accordingly, although these objections appear to lack merit, the objections are deferred until trial

pending Shell's establishment of a foundation for the accuracy of the Rule 1006 summary and for

the admissibility (and possible admission) of the underlying exhibits.

**Shell Exhibits 23, 27, and 28**: International objects to Shell Exhibits 23, 27, and 28, which

appear to be invoices or billing statements from Delmar Systems, Inc., "on the basis of hearsay and

lack of relevancy or authentication."[28] "International submits that these documents should not be

admitted without the proper foundation that any charges allegedly occurred in connection with any

services provided by these vessels actually arose as a direct result of the mooring line incident sued

upon herein."[29] Shell responds that the Pretrial Order stipulates that "invoices that form the basis of

Shell's damage claim were incurred and paid in the ordinary course of business," and that these are

therefore business records subject to the Rule 803(6) hearsay exception.

The Court cannot, from the face of the exhibits themselves or from the opaque briefing by

the parties, determine whether these exhibits will be relevant and admissible at trial or whether Shell

can establish a foundation for their admissibility. The Court notes that the parties did not stipulate

to the issue of causation of Shell's damages in the Pretrial Order. Accordingly, these objections are

deferred until trial.

**Shell Exhibit 63**: Tesla objects to this exhibit, which appears to be an entry in an insurance

claim file, on the basis of relevance, lack of foundation, and hearsay.[30] Shell responds that the

exhibit "was created within the scope of Allianz's duty as insurer agent" for Tesla and that it is

---

[28]R. Doc. No. 239, at 2-3.
[29]R. Doc. No. 239, at 2-3.
[30]R. Doc. No. 233, at 6.

therefore admissible pursuant to Rule 801(d)(2) as a statement by an opposing party.[31]

The Court defers this objection until trial, but notes that Shell has not explained how it will lay a foundation for the introduction of this document, or how Rule 801(d)(2) cures what appears to be multiple levels of hearsay contained in the document. Shell shall not attempt to introduce this exhibit or elicit any testimony regarding this exhibit without first obtaining permission.

**Shell Exhibit 67**: Tesla and International both object to this exhibit which is a spreadsheet entitled "Deepwater Nautilus Anchor Snag Incident Cost Breakdown Summary." According to Shell, this exhibit was created by Shell employee Myles Barrett. Tesla contends that the exhibit is hearsay, that it lacks foundation, and that it is in fact a disguised expert opinion regarding Shell's damages.[32] International contends that the exhibit is hearsay, lacks relevance or a foundation, and that the contents of the exhibit can be testified to by its purported author without introduction of the exhibit itself.[33] Shell responds that the document is a business record, that it is not hearsay pursuant to Rule 803(6), and that defendants have had an opportunity to cross-examine its author at his deposition.[34]

Exhibit 67 is a cryptic single-page document and, absent testimony establishing a foundation, the Court is unable to determine at this time whether it is admissible pursuant to the Rule 803(6) hearsay exception. This objection is deferred until trial.

**Shell Exhibit 68**: Tesla and International object to this exhibit, the expert report of Holly Sharp, CPA and Schedule One appended to that report, as hearsay.[35] Shell withdraws the report,

---

[31]R. Doc. No. 250, at 13-14.
[32]R. Doc. No. 233, at 7.
[33]R. Doc. No. 239, at 3-4.
[34]R. Doc. No. 250, at 10.
[35]R. Doc. No. 233, at 7-8; R. Doc. No. 239, at 4.

itself, as an exhibit, but contends that the Schedule One appended to the report is admissible as a Rule 1006 summary of Shell's damages.[36]

The objection is sustained. The objected-to Schedule One is expressly incorporated into the expert's report and summarizes the expert's opinion regarding Shell's damages. Accordingly, it does more than merely "prove the content of voluminous writings . . . that cannot be conveniently examined in court," Fed. R. Evid. 1006, because it reflects the expert's application of her methodology to such underlying exhibits. Shell has not established that Schedule One is admissible as a Rule 1006 summary. Furthermore, because it is an out-of-court statement by an expert witness being offered for the truth of the matters asserted therein with respect to Shell's damages, it is inadmissible hearsay.[37]

**Shell Exhibit 88**: Tesla and International object to this exhibit, a report signed by Cliff Hills opining about the cause of damage to the DEEPWATER NAUTILUS mooring line, as hearsay.[38] Shell responds that the exhibit is not hearsay because it was "a part of the 'mooring line file'" and it is therefore a business record pursuant to Rule 803(6).[39] Cliff Hills is not listed as a testifying witness in the pretrial order or in any final witness list filed by the parties.

The objection is sustained. Shell fails to explain how this report, which contains opinion testimony by a non-testifying witness regarding the cause of the incident, satisfies the requirements of the Rule 803(6) hearsay exception for records of regularly conducted activity. The mere fact that it was contained in the files of a non-party does not support admission.

---

[36]R. Doc. No. 250, at 10-11.
[37]The Court expresses no opinion as to whether such schedule may be used as a demonstrative aid, although such use appears to be permissible.
[38]R. Doc. No. 2
[39]R. Doc. No. 250, at 11-12.

9

**Shell Exhibit 91**: Tesla objects to this three-page exhibit which appears to contain excerpts from an "Application for Permit to Drill a New Well," on the basis that it is not identified in the pretrial order and that it is misleading, incomplete, and of questionable authenticity.[40] International joins in that objection.[41] Shell responds that its Exhibit 91 is "another summary exhibit created pursuant to Fed. R. Evid. 1006," and that it consists of parts of a voluminous larger exhibit.[42]

Shell does not adequately explain how excerpting certain pages of a larger document constitutes a Rule 1006 "summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." However, this objection is deferred until trial.

**International Exhibit 3**: Tesla objects to this exhibit which appears to be a map of the course of the INTERNATIONAL THUNDER, on the basis of lack of foundation or authenticity, that it is not the "best evidence," and that it "does not constitute reliable and relevant evidence and should be excluded."[43] International did not respond to this objection. Accordingly, the unopposed objection is sustained.

**International Exhibit 43**: Shell objects to this exhibit, contending that this document is irrelevant because it relates to a different drilling unit which operated in the Arctic and not the Gulf of Mexico.[44] Shell points out that the U.S. Magistrate Judge previously denied Internationals' motion to compel Shell to produce information regarding that vessel's mooring system because "discovery of Shell's mooring practices at locations outside the Gulf of Mexico, particularly in the Beaufort Sea

---

[40]R. Doc. No. 233, at 10.
[41]R. Doc. No. 239, at 5.
[42]R. Doc. No. 250, at 12.
[43]R. Doc. No. 233, at 10-11.
[44]R. Doc. No. 236, at 7-8.

off of Alaska's northern slope, is not relevant nor is it likely to lead to admissible evidence."[45] International responds that it is relevant because it goes to actions taken by Shell under other circumstances "to alert mariners to the presence of moorings and take steps to protect those moorings."[46]

The objection to International Exhibit 43 is sustained for the unappealed reasons articulated by the U.S. Magistrate Judge.

**Tesla Exhibit 1**: International objects to Tesla Exhibit 1, an International document entitled "Safe Navigation: Collision and Grounding Avoidance Procedures," on the basis of relevance.[47] A document created by International entitled "Safe Navigation" is patently relevant to this matter which involves issues of safe navigation. International's objection is overruled.

**Tesla Exhibit 22**: Shell objects to Tesla Exhibit 22, a 205-page document entitled "Shell HSSE & SP Control Framework Assurance Protocols" labeled "Compiled February 2014," on the basis that the document post-dates the incident in this case and it is therefore irrelevant to the issues in this case.[48] Tesla responds that the document incorporates earlier documents in effect as of 2009, and it is therefore relevant to Shell's policies in effect at the time of the incident.[49]

Although it is dated February 2014, this document does appear to contain portions dated 2009. This objection is deferred until trial so that an appropriate foundation regarding the origin and history of the document may be established and the Court will be in a better position to determine

---

[45] R. Doc. No. 138, at 1. No appeal was taken from the U.S. Magistrate Judge's order denying the motion to compel.
[46] R. Doc. No. 252, at 7.
[47] R. Doc. No. 239, at 5.
[48] R. Doc. No. 236, at 7.
[49] R. Doc. No. 248, at 13.

which portions of the document, if any, are relevant and admissible.

**Tesla Exhibits 42-57**: Shell makes a blanket objection to Tesla Exhibits 42-57 which it describes as "internal e-mail communications between" personnel of NEXEN, a non-party investor in the drilling lease.[50] According to Shell, these exhibits contain multiple levels of hearsay and, in addition, Tesla has not listed any witness capable of authenticating the exhibits.[51] Tesla responds that the emails and documents, produced in response to a subpoena, "are not hearsay as they are business records for NEXEN and Shell and are statements against Shell's interest."[52]

The Court defers the objections to these exhibits at trial, but notes that Tesla has not sufficiently articulated (1) how it intends to lay a foundation for the admissibility of these exhibits or (2) the applicability of a hearsay exception, including Rule 803(6), with respect to every level of hearsay in every exhibit objected to by Shell.

**Shell Exhibits 8 and 14, and International Exhibits 9, 10, 15**: Tesla objects to these exhibits which are nautical charts containing notations made by certain witnesses at their depositions. Tesla contends that these deposition documents should be unnecessary because the deponents will testify at trial, they will be misleading without the corresponding deposition testimony, and "the exhibits lack the necessary authentication and will not assist the jury in deciding the issues."[53] Shell responds with respect to Exhibits 8 and 14 that the witnesses who created the exhibits can authenticate them, and that the documents are not hearsay as statements made by Tesla employees with respect to matters within the scope of their employment relationship pursuant to

---

[50]R. Doc. No. 236, at 7.
[51]R. Doc. No. 236, at 7.
[52]R. Doc. No. 248, at 13.
[53]R. Doc. No. 233, at 4.

Rule 801(d)(2)(D).

The Court defers these objections until trial at which time the Court will be in a better position to address objections as to how the exhibits are intended to be used at trial.

**Other Issues**

With respect to Tesla objections to "catch-all" exhibit categories,[54] the Court will only allow only exhibits that have been sufficiently and specifically identified by the parties to be introduced at trial.

Finally, objections to Joint Exhibit 23 and Shell Exhibits 45, 57, 65, 71, 73, 77, and 81 are dismissed as moot because such exhibits have been withdrawn in response to the filing of objections.[55]

**CONCLUSION**

Accordingly, in light of the foregoing,

**IT IS ORDERED** that the objections to Joint Exhibits 23 and 28 and Shell Exhibits 45, 57, 65, 71, 73, 77, and 81 are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the objections to Joint Exhibit 28, Shell Exhibits 68 and 88, and International Exhibits 3 and 43, are **SUSTAINED**.

**IT IS FURTHER ORDERED** that the objections to Joint Exhibit 18 and Tesla Exhibit 1 are **OVERRULED**.

**IT IS FURTHER ORDERED** that the objection to Joint Exhibit 27 is **OVERRULED IN PART** as set forth above.

---

[54]R. Doc. No. 233, at 11.
[55]R. Doc. No. 248, at 4, 7; R. Doc. No. 250, at 8, 10, 11, 13, 14.

**IT IS FURTHER ORDERED** that all other objections to exhibits are **DEFERRED UNTIL TRIAL**.

New Orleans, Louisiana, February 11, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

14